# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRANZENNIA SMITH-MCILLWAINE, Plaintiff, | CIVIL ACTION |
| v. | |
| PHILADELPHIA HOUSING DEVELOPMENT CORPORATION, Defendant. | NO. 12-6950 |

DuBois, J.                                                                                                                  August 14, 2013

## **M E M O R A N D U M**

## I. INTRODUCTION

This is an employment discrimination case. Plaintiff Franzennia Smith-McIllwaine brings suit against her former employer, defendant Philadelphia Housing Development Corporation ("defendant" or "PHDC"), for discrimination and retaliation in violation of state and federal law. Presently before the Court is defendant's partial motion to dismiss. For the reasons that follow, the Court grants in part and denies in part defendant's motion.

## II. BACKGROUND[1]

Defendant PHDC is a non-profit corporation organized under the laws of the Commonwealth of Pennsylvania. Plaintiff was employed by defendant from 1983 until 2012. In 2006, plaintiff was "classified as an Environmental Hazards Abatement Inspector III, but was assigned to the Weatherization Assistance Program . . . and assigned the duties of an Energy Efficiency Specialist." (Compl. at ¶13.)

In March of 2006, plaintiff's new supervisor Steve Alexander "assigned [her] a disproportionate number of energy audits" which were "more time consuming and physically

---

[1] As required on a motion to dismiss, the Court accepts all factual averments contained in the Complaint as true.

1

demanding" than other job duties such as "post repair final inspections." (Id. at ¶18, 23.) Alexander "assigned [her] daily energy audits for homes located in geographically diverse areas of the City." (Id. at ¶24.) Alexander also "refused to assign [her] work for which overtime had been approved." (Id. at ¶25.) Plaintiff complained to Alexander and his supervisor Dana Mitchell about these issues, but no action was taken in response. (Id. at ¶26.)

In September of 2008 plaintiff complained to Deputy Director of Operations at PHDC, Sandra Barnhill, about "male Inspectors . . . being given preferential treatment in the assignment of overtime and in the assignment of final inspections, and that the male Inspectors were using profane and obscene language in the workplace . . . . " (Id. at ¶27.) However, no action was taken in response to her complaints. (Id. at ¶28.)

Plaintiff states that beginning in July of 2010, the "profane and offensive" language of the male Inspectors grew worse, and included the distribution of "pornographic videos in[] the workplace . . . . " (Id. at ¶32-35.) Plaintiff again complained to Barnhill about her co-workers' behavior, and Barnhill agreed to move plaintiff's office to a different location. (Id. at ¶37.) On July 28, 2011, plaintiff filed her first charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). (Id. at ¶74.)

By letter dated September 9, 2011, plaintiff received her annual Performance Report for work completed between September 2010 and September 2011. (Id. ¶77.) For the first time in her 28 year career at the PHDC, plaintiff's performance was rated as "unacceptable." (Id. at ¶79.) The Performance Report "criticize[d] [her] for complaining to 'the Executive Office' about her belief" that her supervisors treated her "differently than the male Inspectors when evaluating [her] work performance." (Id. at ¶81.) Plaintiff avers that her supervisors "knew that in the event of further layoffs, the unacceptable rating would preclude [her] from using her

seniority to accept a demotion in lieu of a layoff." (Id. at ¶82.) Plaintiff filed a second EEOC charge in September of 2011 alleging that her unacceptable performance evaluation was retaliation for her previous EEOC charge. (Def. Ex. B.)[2]

In early April 2012 plaintiff requested that "Barnhill arrange for a special performance evaluation as permitted by PHDC's rules," but Barnhill did not respond. No special performance evaluation was conducted before May 2012, when plaintiff learned that her employment was to be terminated in June 2012. (Compl. at ¶83.) Plaintiff's last day of employment with the PHDC was June 30, 2012. (Id. at ¶85.)

Plaintiff brought suit against defendant for gender discrimination and retaliation under both the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act. Specifically, plaintiff alleges that defendant failed "to afford her the same opportunity to earn overtime as that afforded to male Inspectors; more frequently assigned [plaintiff] more arduous duties than those assigned to male Inspectors . . . [and] refused to conduct a Special Performance Evaluation of [plaintiff] . . . ." (Id. at ¶87.) Plaintiff also claims that defendant retaliated against her by, inter alia, "[f]ailing to adequately investigate [plaintiff's] complaints . . . [r]ating [plaintiff's] performance unacceptable because she . . . filed a charge of discrimination with the EEOC . . . [and] refusing to conduct a Special Performance Evaluation of [plaintiff] . . . ." (Id. at ¶94.)

### III. LEGAL STANDARD

Rule 12(b) (6) of the Federal Rules of Civil Procedure provides that, in response to a pleading, a defense of "failure to state a claim upon which relief can be granted" may be raised by motion. In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the Court "accept[s] all factual allegations as true, [and] construe[s] the complaint in the light most favorable to the

---

[2] A court "may consider the EEOC charge and related EEOC documents, including the letter from the EEOC summarizing its investigation, the right to sue letter . . . without converting this motion to one summary judgment." Rogan v. Giant Eagle, Inc., 113 F. Supp. 2d 777, 782 (W.D. Pa. 2000).

plaintiff . . . ." Phillips v. County of Allegheny, 515 F.3d 224, 231, 233 (3d Cir. 2008) (internal quotations omitted).

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . . .'" Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). To satisfy the plausibility standard, a plaintiff's allegations must show that defendant's liability is more than "a sheer possibility." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

## IV. DISCUSSION

Defendant's partial motion to dismiss seeks dismissal of certain of plaintiff's claims: (1) disparate treatment in the assignment of overtime and work duties, (2) the denial of a special performance evaluation and termination of her employment, and (3) for punitive damages. The Court addresses defendant's arguments in turn.[3]

### 1. Disparate Treatment in the Assignment of Overtime and Work Duties

Defendant argues that plaintiff's claims concerning disparate treatment in the assignment of overtime and work duties should be dismissed for two reasons. First, defendant avers that because these disparate treatment claims were not included in plaintiff's EEOC charge, she has failed to exhaust her administrative remedies regarding such claims. Second, defendant argues

---

[3] Concerning plaintiff's state law claims, "the PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently." Slagle v. Cnty. of Clarion, 435 F.3d 262, 265 n.5 (3d Cir. 2006). There are no relevant statutory differences at issue. Accordingly, the Court collectively addresses plaintiff's federal and state claims and refers only to federal law for the purposes of this Memorandum.

that plaintiff is time-barred from raising these claims.

A.  Failure to Exhaust

Concerning defendant's first argument, "[o]nce a charge of some sort is filed with the EEOC . . . the scope of a resulting private civil action in the district court is 'defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination . . . .'" Hicks v. ABT Assocs., Inc., 572 F.2d 960, 966 (3d Cir. 1978) (quoting Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976)).  EEOC charges are given a "fairly liberal construction," and "the failure to check a particular box on an EEOC charge . . . is not necessarily indicative of a failure to exhaust the mandatory administrative remedies." Schouten v. CSX Transp., Inc., 58 F. Supp. 2d 614, 616 (E.D. Pa. 1999).  "[T]he purpose of the filing requirement is to enable the EEOC to investigate and, if cause is found, to attempt to use informal means to reach a settlement of the dispute." Anjelino v. N.Y. Times Co., 200 F.3d 73, 94 (3d Cir. 1999) (citing Hicks, 572 F.2d at 963).

Defendant contends that plaintiff's claims concerning assignment of overtime and work duties are not within the scope of the EEOC investigation.  Specifically, defendant argues that while the Complaint in this case describes such discriminatory acts dating back to 2006, plaintiff's first EEOC charge alleges disparate treatment beginning only in August of 2008.  Defendant concludes that because the EEOC charge does not encompass plaintiff's claims regarding the assignment of overtime and work duties, plaintiff has failed to exhaust her administrative remedies as to those claims.

The Court rejects defendant's argument.  Plaintiff's first EEOC charge states that: "I was working in the Energy department since around 2000.  The harassment started slowly but became very difficult around August 15, 2008." (Pl. Ex. A at 1.)  The Court notes that, "[i]n

5

determining the content of the original complaint for purposes of applying this regulation, we keep in mind that charges are most often drafted by one who is not well versed in the art of legal description. Accordingly, the scope of the original charge should be liberally construed." Hicks, 572 F.2d at 965. Applying a liberal construction to plaintiff's first EEOC charge, the Court determines that the charge describes discrimination beginning before 2008, and in addition, the "core grievance" of the charge and the instant Complaint "is the same . . . . " Waiters v. Parsons, 729 F.2d 233, 238 (3d Cir. 1984). The Court thus concludes that plaintiff's claims pertaining to the assignment of overtime and work duties before 2008 may "reasonably be expected to grow out of the charge of discrimination . . . . " Hicks, 572 F.2d at 966. Defendant's motion on this ground is accordingly denied.

  B. <u>Time-Barred</u>

Defendant next argues that even if these claims of disparate treatment are sufficiently related to plaintiff's EEOC charge, they are time-barred. "Title VII requires a claimant in Pennsylvania to file a charge with the EEOC within 300 days of an unlawful employment practice." <u>Mikula v. Allegheny Cnty. of PA</u>, 583 F.3d 181, 183 (3d Cir. 2009). As such, "any claims based on challenged acts that occurred before" October 1, 2010, 300 days before plaintiff filed her first EEOC charge, are time-barred. <u>See</u> <u>id.</u> However, while claims relating to "discrete acts" must be charged within the statutory time period, for hostile work environment claims, "the employee need only file a charge within . . . 300 days of any act that is part of the hostile work environment." <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 110, 118 (2002). Plaintiff argues that because she has made hostile work environment claims, her allegations based on acts pre-dating October 1, 2010 are not time-barred.

In her Complaint, plaintiff alleges both hostile work environment claims and discrete

6

claims for discrimination and retaliation. The Court concludes that to the extent that plaintiff's hostile work environment claims relate to acts prior to October 2010, they are not time barred, and defendant's motion on this ground is denied. However, to the extent that plaintiff asserts discrete claims of discrimination or retaliation on the basis of pre-October 2010 action, such claims are time-barred, and defendant's motion on this ground is granted.

  2. Denial of Special Performance Evaluation and Termination

Defendant next argues that plaintiff's claims pertaining to the denial of a special performance evaluation and her termination are not encompassed within either of her EEOC charges, and therefore should be dismissed. Specifically, plaintiff alleges that she was retaliated against through the denial of a special performance evaluation and by her eventual termination. Defendant claims that such allegations could not have been investigated by the EEOC, as both incidents occurred after plaintiff filed her second and final EEOC charge. Therefore, defendant argues, plaintiff has failed to exhaust her administrative remedies with respect to these claims.

Where retaliatory or discriminatory acts occur after the filing of an EEOC charge, "the purposes of the statutory scheme are not furthered by requiring the victim to file additional EEOC complaints and re-starting the . . . waiting period." Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984); see also Lin v. Rohm & Haas Co., 865 F. Supp. 2d 649, 662 (E.D. Pa. 2012). Thus, the Third Circuit permits suits "based on new acts that occur during the pendency of the case which are fairly within the scope of an EEOC complaint or the investigation growing out of that complaint . . . . " Waiters, 729 F.2d at 237. "However, where no administrative investigation is pending at the time of the subsequent acts, the complainant must file a new administrative charge prior to filing suit." Pourkay v. City of Philadelphia, 2009 WL 1795814, at *7 (E.D. Pa. June 23, 2009); see Flora v. Wyndcroft Sch., 2013 WL 664194, at *5 (E.D. Pa.

7

Feb. 25, 2013) (collecting cases).  As noted above, plaintiff submitted her second EEOC charge on September 16, 2011, alleging retaliation in the form of the negative performance evaluation for her prior EEOC charge.  Plaintiff now alleges both retaliation and discrimination based on the fact that PHDC refused to conduct a special performance evaluation in April 2012, and used the "unacceptable" performance rating to deny her the right to accept a demotion instead of a layoff in June 2012, resulting in her termination.

First, concerning the denial of a special performance evaluation, the parties do not dispute that the EEOC investigation was still pending in April 2012, when the alleged denial occurred.  Further, the "core grievance" of the EEOC charges and plaintiff's claims relating to the special performance evaluation "[are] the same," as she alleges discrimination and retaliation in both her charges and her instant Complaint.  Waiters, 729 F.2d at 238.   The Court therefore concludes that plaintiff's claims relating to the denial of a special performance evaluation fall within the "scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination . . . .'"  Hicks v. ABT Assocs., Inc., 572 F.2d 960, 966 (3d Cir. 1978) (quoting Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976)).  Defendant's motion on this ground is denied.

Next, concerning plaintiff's termination, defendant argues that the EEOC completed its investigation prior to plaintiff's last day of work, June 30, 2012.  In support, defendant attaches a letter dated June 11, 2012 from an EEOC investigator stating that, "Because Respondent is a public employer the request for the Notice of Rights must be sent to the Department of Justice for approval.  The previously issued Notice of Rights is hereby rescinded and will be considered for reissuance by the DOJ."  (Def. Ex. D.)   Defendant argues that "it is clear from the . . . letter that that EEOC had completed its investigation, either because it had previously issued a Notice

8

of Right to Sue or because it was referring the request to DOJ . . . . " (Reply, at 5.)  Defendant claims that because plaintiff's termination occurred after the EEOC investigation was closed, she has failed to exhaust her administrative remedies regarding her termination.

Significantly, defendant does not have any record of a Notice of Rights issued by the EEOC prior to plaintiff's termination.  (Reply, at 5 n.2.)  Indeed, none of the administrative documents submitted by defendant establish that the EEOC's investigation was closed prior to plaintiff's termination.  Rather, the EEOC's Notice of Right to Sue is dated July 30, 2012, and contains a checked box which states, "The EEOC is terminating the processing of this charge." (Def. Ex. E.)  Defendant also attaches another letter, dated October 15, 2012, from an EEOC Enforcement Supervisor, which states that plaintiff's request for a "Notice of Right-to-Sue" has been referred to the DOJ and, "[t]he Department of Justice will act on your request as soon as possible and issue of the Notice of Right-to-Sue directly to you."  (Def. Ex. F.)  The letter goes on to state, "[p]lease note that with the issuance of the Right-to-Sue the EEOC discontinue [sic] its administrative processing of this charge."  (Id.)  Finally, defendant attaches a letter dated December 3, 2012, from a Supervisory Civil Rights Analyst at the Department of Justice, notifying plaintiff of her right to institute a civil action under Title VII.  (Def. Ex. G.)

The Court rejects defendant's argument that the EEOC investigation must have concluded prior to plaintiff's termination.  The June 11, 2012 letter, upon which defendant relies, states only that plaintiff's request "must be sent" to the Department of Justice, but not that the EEOC has concluded its investigation.  Instead, the first document which includes any suggestion of closing the investigation is the Notice of Right to Sue dated July 30, 2012, one month after plaintiff's termination.

On the present state of the record, the Court cannot find that the EEOC completed its

investigation by the time of plaintiff's termination. Thus, for the same reasons stated above, concerning the denial of a special performance evaluation, the Court concludes that claims concerning plaintiff's termination fall within the "scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination . . . .'" Hicks, 572 F.2d at 966. Defendant's motion on this ground is therefore denied.

       3.  Punitive Damages

Defendant next argues that plaintiff's claims for punitive damages should be dismissed, because such damages are not available against local government agencies such as the PHDC. Plaintiff has requested such damages only in the context of her federal law claims.

In a Title VII action, under 42 U.S.C. § 1981a(b)(1), a plaintiff may not recover punitive damages from "a government, government agency or political subdivision." In support of its argument that it is a government agency, defendant cites Weinerman v. City of Philadelphia, 785 F. Supp. 1174 (E.D. Pa. 1992), which held that the PHDC was a "local agency" for purposes of the Pennsylvania Political Subdivision Tort Claims Act. Defendant states that fifteen directors sit on PHDC's board, six of whom are city officials, eight are appointed by the Mayor "and the remaining member is the Executive Vice President of PHDC." (Mot. at 3 n.2.)

The Third Circuit has held that municipalities and government agencies are immune from punitive damages because such damages may punish the public at large through the possible imposition of higher taxes, and because the deterrent effect of punitive damages against government entities is "is far more speculative than the deterrent effect of punitive damage awards on individuals who violate Section 1983 . . . . " Evans v. Port Auth. of New York & New Jersey, 273 F.3d 346, 356 (3d Cir. 2001) (quoting Bolden v. Se. Pennsylvania Transp. Auth., 953 F.2d 807, 830 (3d Cir. 1991)). In this case, there has been no discovery as to how PHDC is

funded and whether it generally functions as a "government agency" for purposes of § 1981a. Without such discovery, the Court cannot conclude on the present state of the record that PHDC is a government agency and, as such, cannot be liable for punitive damages in a Title VII action. Defendant's motion on this ground is accordingly denied.

## V. CONCLUSION

For the foregoing reasons, defendant's motion is granted in part and denied in part. An appropriate order follows.